UNITED STATES DISTRCT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: _____

ARGONAUT INSURANCE COMPANY,
a foreign corporation,

  Plaintiff,

v.

COLLAGE DESIGN & CONSTRUCTION
GROUP, INC. d/b/a THE COLLAGE
COMPANIES, a Florida corporation,

  Defendant.
_____/

**COMPLAINT FOR DECLARATORY RELIEF**

  Plaintiff, ARGONAUT INSURANCE COMPANY ("ARGO"), hereby sues Defendant, COLLAGE DESIGN & CONSTRUCTION GROUP, INC. d/b/a THE COLLAGE COMPANIES ("COLLAGE"), and alleges as follows:

**I.  JURISDICTION AND VENUE**

  1.  This is an action for declaratory judgment and supplemental relief under 28 U.S.C. §§220l and 2202.

  2.  Subject matter jurisdiction is based upon 28 U.S.C. §1332(a)(1), diversity of citizenship. The parties are citizens of different states and the amount in controversy exceeds the jurisdictional limits of this Court.

  3.  Plaintiff, ARGO, is a corporation organized and existing under the laws of the State of Illinois, whose principal place of business and corporate headquarters is located in Chicago, Cook County, Illinois, and who is duly registered and authorized to do business in the State of Florida.  ARGO is a citizen of the State of Illinois.

4. Defendant, COLLAGE, is a corporation organized and existing under the laws of the State of Florida, whose principal place of business and corporate headquarters is located in Lake Mary, Seminole County, Florida, and who is duly registered and authorized to do business in the State of Florida. COLLAGE is a citizen of the State of Florida.

5. The amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorneys' fees, and this Court otherwise has jurisdiction over the subject matter hereof.

6. Venue is proper in this Court because (1) COLLAGE's principal place of business and corporate headquarters is located in Lake Mary, Seminole County, Florida; and (2) a substantial part of the events and omissions giving rise to this lawsuit occurred or will be occurring in this district, including, but not limited to the arbitration proceedings, which ARGO seeks to enjoin and have the Court declare ineffective, set to take place in Orange County, Florida.

7. All conditions precedent to the filing of the instant action have occurred or have otherwise been waived.

## II. GENERAL ALLEGATIONS

8. On or about December 12, 2019, COLLAGE, as general contractor, and Safe Electric, LLC ("Safe"), as subcontractor, entered into a written *Subcontract Agreement* (the "*Subcontract*") to perform certain electrical work on the project commonly known as Hyatt Vilano Beach located at 125 Vilano Road, St. Augustine, FL 32084 (the "Project"). A true and correct copy of the *Subcontract* is attached hereto and made a part hereof as **Exhibit "A"**.

9. On or about May 28, 2019, ARGO, as surety, issued a *Performance Bond* bearing no. CMGP0002288 (the "*Bond*") on behalf of Safe, as principal, and with COLLAGE, as obligee. A true and correct copy of the *Bond* is attached hereto and made a part hereof as **Exhibit "B"**.

10. Paragraph 4 of the *Bond* explicitly sets forth the express conditions precedent under the *Bond* to trigger ARGO's performance obligations: (1) COLLAGE must declare Safe to be in default under the *Subcontract*; and (2) COLLAGE must have performed all of its obligations under the *Subcontract*. The *Bond* states, in pertinent part, as follows:

> **PRINCIPAL DEFAULT.** Whenever the Principal shall be, and <u>***is declared by the Obligee to be in default***</u> under the Subcontract, <u>***with the Obligee having performed its obligations in the Subcontract***</u>, the Surety may promptly remedy the default or shall promptly:
>
> 4.1 **COMPLETE SUBCONTRACT** …
>
> 4.2 **OBTAIN NEW CONTRACTORS** …
>
> 4.3 **PAY OBLIGEE** ….
>
> 4.4 **DENY LIABILITY** … (Emphasis added).

11. As part of the express conditions set forth in Paragraph 4 of the *Bond*, COLLAGE was required to comply with the requirements of the *Subcontract*. Paragraph III of the *Subcontract*'s Additional Terms and Conditions establishes certain notice requirements prior to declaring a default and/or terminating Safe thereunder.

12. Specifically, before declaring a default, the *Subcontract* requires COLLAGE to serve upon Safe a three (3) day cure notice. If the issue in the initial cure notice continues, then the *Subcontract* requires COLLAGE to serve an additional three (3) day notice <u>*before either declaring a "default" and/or "terminating" the Subcontract*</u>. Article III of the *Subcontract* states as follows:

> III. Should the Subcontractor fail to do or perform the work required hereunder, thereby in the opinion of the Collage causing or threatening to cause delay or damage in the general progress of the project, or if Subcontractor shall furnish nonconforming work or fail to adequately supervise the work, or commit any other breach of this Subcontract Agreement, Collage shall have the right to investigate

>the cause of such failure, and, **_upon three (3) days' notice to Subcontractor_**, expedite, supplement, correct, or take charge of and complete the performance, acceleration and/or repair of said work or any part of it at Subcontractor's sole expense (including responsibility for Collage's legal fees and costs).
>
>If Subcontractor's delay, poor performance, lack of performance, inadequate supervision or provision of nonconforming or defective work or other breach of the terms of this Subcontract continue, **_upon an additional three (3) day notice_**, **_Collage may declare Subcontractor in default and,_** at Collage's sole option, **_(a) proceed immediately with completion of the work under this Subcontract_**, including providing supervision, re-executing agreements, supplementation, acceleration, and furnishing materials and labor, all at Subcontractor's sole expense **_or (b) terminate this Subcontract_** and complete the work at Subcontractor's expense, withholding payment otherwise due to Subcontractor under this and/or any other contract or agreement between Collage and Subcontractor … (Emphasis added).

13. COLLAGE must satisfy the conditions precedent of Paragraph III of the *Subcontract* and Paragraph 4 of the *Bond* to trigger ARGO's obligations under the *Bond*.

14. If and when those conditions precedent are, in fact, satisfied, ARGO has a reasonable amount of time to conduct its investigation before making an election on how it will proceed under Article 4 of the *Bond*.

15. By the end of 2021, construction disputes arose between COLLAGE and Safe involving three (3) separate and distinct alleged issues pertaining to: (a) lack of manpower; (b) payment of City Electric materials; and (3) trench safety violation.

16. On December 1, 2021, COLLAGE issued a letter to Safe and copied ARGO, notifying of Safe's alleged lack of manpower and demanding ARGO's involvement.

17. On December 2, 2021, ARGO responded to COLLAGE, acknowledging its letter and requesting pertinent construction documents to begin its investigation.

18. On December 14, 2021, COLLAGE provided some, but not all, of the documents requested by ARGO.

19. On December 20, 2021, COLLAGE issued its *Notice of Default* based upon Safe's alleged failure to provide proof of stored materials on site in accordance with the *Subcontract* and a claim of lien recorded by Safe's vendor City Electric Supply. Notably, the *Notice of Default* was not based upon the alleged lack on manpower in accordance with its prior notices. As it relates to manpower, COLLAGE, in the *Notice of Default*, provided Safe an additional three-day notice.

20. On the very next day, December 21, 2021, ARGO responded to the *Notice of Default*. In particular, ARGO acknowledged COLLAGE's claim under the *Payment Bond* and requested specific information in response which was not provided by COLLAGE.

21. On December 27, 2021, ARGO conducted a conference call with COLLAGE and Safe to determine the status of the Project and to address the default allegations.

22. As a result of the *Notice of Default*, ARGO also retained an independent construction consultant to assist in ARGO's investigation. On January 3, 2022, ARGO's consultant visited the Project site and observed the status of the electrical work.

23. Despite having issued the *Notice of Default*, COLLAGE failed to provide certain key information as requested by ARGO's correspondence dated December 2, 2021.

24. By its correspondence dated January 13, 2022, COLLAGE advised ARGO that "Collage is in the process of bringing on additional electricians in accordance with the original 3-day notice with which Safe has not complied." It further advised ARGO that "Collage is bringing on supervision" to address the unacceptability of Safe's foreman.

25. On January 26, 2022, ARGO denied COLLAGE's claim under the *Performance Bond* under a complete reservation of rights. In its response, ARGO challenged, among other

things, the validity of the default under the *Subcontract* and *Bond*. A true and correct copy of ARGO's January 26, 2022 letter is attached hereto and made a part hereof as **Exhibit "C"**.

26. On January 27, 2022, Safe issued correspondence to COLLAGE responding to the various notices stating that Safe is "at a standstill on the Project because [COLLAGE] has not been able to properly sequence other trades' work and refused to process change orders." A true and correct copy of Safe's January 27, 2022 letter is attached hereto and made a part hereof as **Exhibit "D"**.

27. On January 31, 2022, Safe issued its *Notice of Nonpayment* to COLLAGE, asserting that COLLAGE failed to pay Safe $326,513.98. A true and correct copy of Safe's *Notice of Nonpayment* is attached hereto and made a part hereof as **Exhibit "E"**.

28. On February 2, 2022, COLLAGE issued its *Three-Day Notice to Supplement Work* based on allegation of Safe's lack of manpower on the Project.

29. Thereafter, on the next day, on February 3, 2022 (without providing Safe its three day cure period as stated in its February 2, 2022 letter), COLLAGE issued its *Supplementation of Work* letter, wherein it advised that COLLAGE entered into a supplementation contract with Sentry, Electric, Inc. ("Sentry") to supplement Safe's work. Notably, the contract between COLLAGE and Sentry was executed and effective as of January 27, 2022.

30. On February 23, 2022, Safe objected to COLLAGE's *Supplementation of Work*, asserting the following:

> a. **Manpower / Sequencing Issues**. Safe maintained adequate manpower despite COLLAGE's refusal to make any payment to Safe since July 2021. Moreover, Safe has been unable to proceed with its remaining scope of work (which is 90% complete) because of COLLAGE's inability to sequence other trades.

      b. **Supplementation By Sentry**. Safe objects to the supplementation work due to the sequencing issues, which is evidenced by the fact that Sentry is performing minimal work (not on the critical path) due to the same sequencing issues.

A true and correct copy of Safe's February 23, 2022 letter is attached hereto and made a part hereof as **Exhibit "F"**.

31. On March 4, 2022, COLLAGE issued its *Notice of Termination*.

32. On the same day, Safe responded to the *Notice of Termination* addressing each category in turn, by stating, among other things: (1) Safe's adequate manpower; (2) COLLAGE's failure to pay Safe; (3) COLLAGE's failure to manage the Project and/or sequence other trades preventing Safe from completing its work; (4) COLLAGE's failure to pay for the materials held off site and/or COLLAGE's failure to provide room at the Project for same; and (5) COLLAGE's improper supplementation of Safe's work. A true and correct copy of Safe's March 4, 2022 letter is attached hereto and made a part hereof as **Exhibit "G"**.

33. On March 7, 2022, ARGO issued a letter to COLLAGE acknowledging the *Notice of Termination* and acknowledging it as a second bond claim as ARGO denied the first claim. In said letter, Argo requested further information / documentation related to the claim. A true and correct copy of ARGO's March 7, 2022 letter is attached hereto and made a part hereof as **Exhibit "H"**.

34. On May 17, 2022, COLLAGE filed its *Demand for Arbitration* to the American Arbitration Association (Case No.: 01-22-0002-1063) against ARGO claiming that ARGO breached the *Bond* by failing to perform thereunder.

35. ARGO has retained the undersigned counsel to represent its interests in the instant action and is required to pay a reasonable fee for such services. Pursuant to the *Bond*, *Subcontract*,

and applicable statutes, ARGO is entitled to recover its attorneys' fees and costs for pursuing the instant action against COLLAGE.

36. All conditions precedent to bring this action have either been satisfied or waived.

## COUNT I - DECLARATORY JUDGMENT
## (AS TO CONDITIONS PRECEDENT)

37. ARGO re-alleges and re-avers the allegations of paragraphs 1 through 36 hereof, as if fully set forth herein.

38. There is a bona fide present controversy between the parties covering the rights and obligations of ARGO under the *Bond*.

39. As conditions precedent to triggering ARGO's performance obligations, the *Bond* requires that: (a) Safe be in "default-in-fact" in accordance with the terms and conditions of the *Subcontract*; (b) COLLAGE declare that default to ARGO; (c) COLLAGE not be in breach of its obligations under the *Subcontract*; and (d) COLLAGE provide ARGO a reasonable amount of time to conduct its investigation and elect its remedies under the *Bond*.

40. COLLAGE failed to satisfy these conditions precedent under the *Bond* or is otherwise in material breach of the *Bond*.

41. At all times material hereto, Safe properly performed and was not in default under the *Subcontract*.

42. At all times material hereto, COLLAGE failed to provide requisite notices to default, supplement and terminate Safe under the *Subcontract*.

43. At all times material hereto, COLLAGE was in breach of its obligations under the *Subcontract* by, among other things, wrongfully declaring Safe in default and terminating its rights under the *Subcontract*.

44. Without limiting the generality of the foregoing, COLLAGE, among other things, failed to pay Safe in accordance with the *Subcontract*, mismanaged the Project, improperly supplemented Safe's work and wrongfully terminated the *Subcontract*.

45. At all times material hereto, COLLAGE did not cooperate with ARGO's investigation, refused to provide certain key information, and otherwise did not give ARGO a reasonable amount of time to complete its investigation before improperly supplementing Safe's work.

46. ARGO seeks a declaration that COLLAGE has failed to satisfy the conditions precedent to assert a claim against the *Bond*, is in breach of the *Bond* and, thus, ARGO has no obligations under the *Bond*.

**WHEREFORE**, Plaintiff ARGO respectfully requests that this Honorable Court enter a judgment in its favor and against Defendant COLLAGE:

a. Finding that COLLAGE failed to satisfy any and/or all of the conditions precedent under the *Bond* as set forth herein;

b. Declaring that COLLAGE's claim against the *Bond* is barred and that ARGO has no obligations under the *Bond*;

c. Awarding attorneys' fees and costs incurred in connection with the prosecution of the instant action; and

d. Awarding ARGO such other and further relief as may be necessary, just and proper under the circumstances.

## COUNT II- DECLARATORY JUDGMENT
## (AS TO ARBITRATION)

47. ARGO re-alleges and re-avers the allegations of paragraphs 1 through 36 hereof, as if fully set forth herein.

48. There is a bona fide present controversy between the parties covering the rights and obligations of ARGO under the *Bond*.

49. On May 17, 2022, COLLAGE filed its *Demand for Arbitration* against ARGO asserting a claim *solely* under the *Bond*. A true and correct copy of the *Demand for Arbitration* is attached hereto and made a part hereof as **Exhibit "I"**.

50. The *Demand for Arbitration* is based upon Paragraph IX of the *Subcontract*, which contains an arbitration provision between COLLAGE and Safe, stating that "[a]ll disputes **_under this Subcontract_** will be settled by arbitration in accordance with the current Construction Industry Rules of the American Arbitration Association." COLLAGE maintains that, because the *Bond* contains an "incorporation by reference" provision, ARGO agreed to arbitrate issues concerning liability under the *Bond*.

51. ARGO is neither a party to the *Subcontract* nor did it perform any work on the Project. COLLAGE did not assert a claim against Safe in the *Demand for Arbitration*. There are no claims under the *Subcontract* asserted in the *Demand for Arbitration*.

52. More importantly, the *Bond* issued does <u>not</u> contain an "arbitration" provision. To the contrary, the *Bond* contemplates a "suit" or "action" as the method for handling disputes under the *Bond*. Specifically, Article 5 of the *Bond* states, in pertinent part, the following:

> **TIME FOR SUIT.** *Any <u>suit</u> under this bond* must be instituted before the expiration of two (2) years from the date of substantial completion as established by the contract documents.

Further, the *Bond* makes clear that the Alteration Notice Waiver provision in Article 3 does "not apply to the ***time for suit*** provided by paragraph 5 hereunder."

53. Moreover, Article 6 of the *Bond* limits the "Right of ***Action***" to the named obligee and its heirs, executors, administrators or successors. The Florida Supreme Court in *Miele v. Prudential-Bache Securities, Inc.*, 656 So.2d 470, 473 (Fla. 1955) (interpreting *Fla. Stat.* §768.73(2)), determined that the term "action" refers to proceedings filed in court and not arbitrations.

54. The clear language of the *Bond* undermines COLLAGE's position that ARGO agree to arbitrate the disputes arising solely under the *Bond*.

55. ARGO and COLLAGE never entered into an agreement to arbitrate the disputes under the *Bond*. To rule otherwise, would, in effect, read out the bond language expressly providing for a judicial resolution of a dispute under the *Bond*.

56. In the absence of a clear and stated intent on part of ARGO to be bound to arbitrate, ARGO cannot, and should not, be compelled to arbitrate the issues by and between ARGO and COLLAGE.

57. ARGO is aggrieved by COLLAGE's proceeding with arbitration when there exists not valid, enforceable, or irrevocable agreement to arbitrate between them.

58. Under Florida law, including, but not limited to, §§ 682.02 and 628.03, *Florida Statutes*, the court has the authority to decide whether an enforceable agreement to arbitrate exists between the parties.

59. A judicial determination is necessary and appropriate under the circumstances so that ARGO may ascertain its rights and obligations.

**WHEREFORE**, Plaintiff ARGO respectfully requests that this Honorable Court enter a judgment in its favor and against Defendant COLLAGE:

a. Declaring that there is no binding arbitration agreement between ARGO and COLLAGE and that ARGO is not required to submit to arbitration with COLLAGE;

b. Awarding ARGO its attorneys' fees and costs incurred in connection with the prosecution of the instant action; and

c. Awarding ARGO such other and further relief as may be necessary, just and proper under the circumstances.

### COUNT III- ALL WRITS ACT
### (INJUNCTIVE RELIEF AS TO ARBITRATION)

60. ARGO re-alleges and re-avers the allegations of paragraphs 1 through 36 and 47 through 59 hereof, as if fully set forth herein.

61. This action is for preliminary injunctive relief under 28 U.S.C §1651(a) (*i.e.*, the All Writs Act), as well as for traditional preliminary injunctive relief.

62. ARGO is being wrongfully required to arbitrate COLLAGE's claim under the *Bond*, despite the fact that no arbitration agreement exists between ARGO and COLLAGE and ARGO never, otherwise, agreed to arbitration.

63. COLLAGE's conduct will cause significant and irreparable injury, in that ARGO must either: (1) defend COLLAGE's claim before the American Arbitration Association despite its lack of jurisdiction over the claim; or (2) refuse to participate in the arbitration and expose itself to the possibility of a default or other adverse consequences.

64. ARGO has no adequate remedy at law, in that: (1) arbitration of COLLAGE's claim will continue despite the absence of jurisdiction over the claim, thus prejudicing ARGO's rights; (2) ARGO will be irreparably harmed if the arbitration proceeds and they are forced to defend

against the action despite the lack of jurisdiction; and (3) ARGO will be irreparably harmed if the arbitration proceeds without it and an adverse award is entered against it.

**WHEREFORE**, Plaintiff, ARGO, respectfully requests that this Honorable Court enter a judgment in its favor and against Defendant COLLAGE:

a. Granting ARGO a temporary restraining order, and a preliminary and permanent injunction enjoining COLLAGE from proceeding with the arbitration of its claim against ARGO before the American Arbitration Association;

b. Awarding ARGO its attorneys' fees and costs incurred in connection with the prosecution of the instant action; and

c. Awarding ARGO such other and further relief as may be necessary, just and proper under the circumstances.

**DATED** this **15th** day of June 2022.

ETCHEVERRY HARRISON LLP
Attorneys for ARGO
150 South Pine Island Road, Suite 105 Ft. Lauderdale, FL 33324
Phone: (954) 370-1681
Fax: (954) 370-1682
etcheverry@etchlaw.com
geller@etchlaw.com
service@etchlaw.com

By:   */s/ Edward Etcheverry*
    Edward Etcheverry, Fla. Bar No.: 856517
    Justin E. Etcheverry, Fla. Bar No.: 1002742