**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ARGONAUT INSURANCE COMPANY,**
                    **Plaintiff,**
**v.**                                                    **Case No: 6:22-cv-1055-RBD-DAB**
**COLLAGE DESIGN & CONSTRUCTION GROUP, INC.,**
                    **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration of the following motion[1] filed herein:

| |
|---|
| **MOTION:  Motion to Compel Arbitration, Dismiss Count III of the Amended Complaint for Injunctive Relief and for Stay (Doc. 7)** |
| **FILED:   June 23, 2022** |
| _____ |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**. |

**I.   BACKGROUND**

Plaintiff Argonaut Insurance Company ("Argonaut") brings this declaratory judgment action concerning payment under a performance bond for a subcontractor's alleged default after the general contractor, Collage Design & Construction Group, Inc. ("Collage") made demand. (Doc. 1 ¶ 1). Argonaut seeks a declaration that it does

---

[1] A Preliminary Scheduling Conference was held on August 10, 2022. Doc. 26.

not owe payment to Collage because it failed to cooperate and comply with conditions required by the Bond.

On December 12, 2019, Collage and Safe Electric, LLC ("Safe Electric") entered into a written subcontractor agreement (the "Subcontract") to perform certain electrical work on the project for the Hyatt Vilano Beach ("the Project"). Doc. 6-1. As the parties explained during the hearing, although the Project was the construction of the Hyatt Vilano Beach located in St. Augustine, St. John's County, Florida—for which venue would lie in the Jacksonville Division—the Subcontract contains a dispute resolution provision with a stipulation for venue in Orange County, Florida. *Id.* at 4 (Art. X). Thus, Argonaut filed suit in the Orlando Division under the terms of the Subcontract.

As a condition of the Subcontract, Safe Electric agreed to provide a payment and performance bond. *Id.* at 7 ¶ 55. On May 28, 2019, Argonaut issued the Subcontract Performance Bond on a standard Associated General Contractors of America form (Copyright 1988), Bond No. CMGP0002288, naming Collage as Obligee ("the Bond"). Doc. 6-2. The Bond provides in pertinent part:

> 1. SCOPE OF BOND. The Principal and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Obligee for the performance of the Subcontract, *which is incorporated in this bond by reference. . . .*

> 2. EFFECT OF OBLIGATION. If the Principal performs the Subcontract, then this bond shall be null and void; otherwise it shall remain in full force and effect.

\*\*\*

4. PRINCIPAL DEFAULT. Whenever the Principal shall be, and is declared by the Obligee to be in default under the Subcontract, with the Obligee having performed its obligations in the Subcontract, the Surety may promptly remedy the default, or shall promptly:

4.1 Complete the Subcontract. . .; or
4.2 Obtain New Contractors. . .; or
4.3 Pay Obligee. . .; or
4.4. Deny Liability. . . .

5. TIME FOR SUIT. Any suit under this bond must be instituted before the expiration of two (2) years from the date of substantial completion as established by the contract documents.

6. RIGHT OF ACTION. No right of action shall accrue on this bond to or for the use of any person or entity other than the Obligee named herein, its heirs, executors, administrators or successors.

*Id*. at 2 (emphasis added).

Pursuant to Article 1 of the Bond, the Subcontract is incorporated by reference into the Bond. *Id.* at 2. Although the Bond itself does not contain an "arbitration" provision, the Subcontract states as follows:

IX. All disputes under this Subcontractor will be settled by arbitration in accordance with the current Construction Industry Rules of the American Arbitration Association. It is expressly agreed that any dispute under this Subcontract Agreement shall be decided by a panel of three (3) arbitrators, at least two of which shall be members of The Florida Bar. The arbitration panel shall follow Florida law and shall be required to provide a written decision specifying the major findings of fact and rulings of law upon which the decision is based. . . The arbitrator's award shall be confirmed in a court of competent jurisdiction in Florida.

Doc. 6-1 at 4.

By the end of 2021, disputes concerning the construction arose between Safe Electric and Collage, who subsequently made a demand against the Bond issued by Argonaut. Doc. 6 ¶¶ 15, 19. On December 20, 2021, Collage issued a Notice of Default based on Safe Electric's alleged failures; Argonaut acknowledged Collage's claim under the Bond, but requested more specific information. *Id.* at ¶¶ 19, 20. On January 26, 2022, Argonaut denied Collage's claim under the Bond under a reservation of rights. *Id.* ¶ 25. Collage eventually hired a different company to supplement Safe Electric's work on January 27, 2022 and terminated Safe Electric, which complained about nonpayment for its work. *Id.* ¶¶ 27, 29, 31. On March 7, 2022, Argonaut acknowledged Collage's (second) claim. *Id*. ¶ 33. Two months later, on May 17, 2022, Collage filed a Demand for Arbitration to the American Arbitration Association[2] against Argonaut asserting a claim under the Bond. *Id*. ¶¶ 34, 49.

A month later, on June 15, 2022, Argonaut filed a declaratory judgment action in this Court against Collage seeking a determination on the Bond. Doc. 1. On June 21, 2021, Argonaut filed its Amended Complaint seeking a declaratory judgment that: the surety does not owe Collage payment under the Bond because Collage failed to comply with conditions precedent under the Bond and failed to cooperate (Count I); no arbitration agreement exists between Collage and Argonaut, who was not a party to the Subcontract (Count II); and seeking to enjoin the ongoing arbitration

---

[2] Case No.: 01-22-0002-1063.

proceedings under the All Writs Act (Count III). Doc. 6. In the Amended Complaint, Argonaut requests a temporary restraining order and preliminary as well as permanent injunctive relief to halt the arbitration. *Id.* ¶ 66. However, Argonaut has not filed a separate motion for such relief as required under the Local Rules. *See* Local Rules 6.01, 6.02.

On June 17, 2022, Collage filed its Motion to Compel Arbitration, asserting that the Court is required to compel arbitration of the dispute regarding payment under the Bond because it incorporated by reference the terms of the Subcontract, which includes a written agreement to arbitrate. Doc. 7. Argonaut filed its response arguing that it is not a party to the Subcontract Agreement, the Bond does not contain an arbitration provision, and it should not be compelled to arbitrate where the terms of the Bond agreement anticipate a "suit." Doc. 20.

Argonaut also filed suit on June 22, 2022 against Safe Electric in a related case in the Tampa Division seeking indemnity under the Bond from the principals of Safe Electric (who reside in Polk County, within the Tampa Division) on the basis of Collage's $1.5 million claim (and others) against the Bond. *See Argonaut Insurance Company v. Safe Electric, LLC*, Case No. 8:22-cv-01417-TPB-TGW (M.D. Fla.).

## II.    LEGAL STANDARD

Pursuant to the Federal Arbitration Act ("FAA"), "a written agreement to arbitrate a controversy arising out of [a] contract 'shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) (quoting 9 U.S.C. § 2). The FAA provides a federal "policy favoring arbitration." *Am. Express Co. v. Italian Colors Rest.,* 570 U.S. 228, 233 (2013) (citation omitted). Under the Federal Arbitration Act ("FAA"), "courts must 'rigorously enforce' arbitration agreements according to their terms." But "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id. Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022).

The parties agree that the Court, not the arbitrators, must decide whether the dispute here is arbitrable. Doc. 7 at 8-8 (citing *Grant v Rotolante*, 147 So.3d 128 (Fla. 5th DCA 2014); Doc. 20 at 2 ("*This Court* should be the body to first determine whether an agreement to arbitrate exists or does not exist); *id*. at 6 ("Here, the only question *for the Court* is whether an enforceable arbitration agreement exists between Argo and Collage."). The parties also agree that Florida law governs the analysis. *See* Doc. 7 at 6-7 (citing *Seifert v U.S. Home Corp.*, 750 So.2d 633, 637 (Fla. 1999)); Doc. 20 at 2, 5 ("state law governs the analysis").

Arbitration agreements are presumptively valid and enforceable. *See* 9 U.S.C. § 2. In considering whether to compel arbitration, courts consider "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration has been waived." *Lane v. Gould & Lamb, LLC*, No.

8:14-cv-3116-T-30AEP, 2015 WL 3609108, at *1 (M.D. Fla. Apr. 21, 2015) (quotation marks and citation omitted). If the requirements are met, courts must compel arbitration according to the agreement's terms. *See* 9 U.S.C. §§ 3–4; *see also John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003). At the request of one of the parties, the court must stay the proceedings until arbitration has occurred. *See* 9 U.S.C. § 3. Specifically, "the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2–4; *Paladino v. Avnet Comput. Techs., Inc.*, 134 F.3d 1054, 1061 (11th Cir. 1998)).

Argonaut argues that in deciding the underlying question of whether the parties have a valid arbitration agreement, no presumption in favor of arbitration should be applied. Doc. 20 at 5 (citing *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1122 (11th Cir. 2014). "Arbitration is a matter of contract [and] the FAA's strong pro-arbitration policy only applies to disputes that the parties have agreed to arbitrate." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). "An exception to that rule is that a nonparty may force arbitration 'if the relevant state contract law allows him to enforce the agreement' to arbitrate" as spelled out in the Supreme Court's 2009

decision in *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 632 (2009). *Lawson v. Life of the S. Ins. Co*., 648 F.3d 1166, 1170 (11th Cir. 2011) (quoting *Carlisle,* 556 U.S. at 632)(setting forth "traditional principles of state law" allowing a contract to be enforced by or against nonparties through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel"); *cf. Bd. of Trs. v. Citigroup Global Mkts., Inc.*, 622 F.3d 1335, 1342–43 (11th Cir. 2010) (applying state contract law to determine if a non-signatory to an arbitration clause could be compelled to arbitrate under agency principles). In this case, state law governs the question of whether Argonaut can be required to arbitrate Collage's claims made against the Bond.

## III.   ANALYSIS

Based on the parties' briefing, the crux of the issue in this case boils down to whether the express arbitration provision in the Subcontract is incorporated into the Bond agreement such that arbitration of the parties' dispute over the Bond should be compelled, even in light of references in the Bond to "time for suit." One practice guide author opines: "Incorporation of an arbitration provision in a payment or performance bond is generally held to render the surety subject to arbitration with the claimant or obligee under the bond." Schwartzkopf, *Binding Effect of the Arbitration Provision on the Surety*, PRAC. GUIDE CONSTRUCTION CONT. SURETY CLAIMS § 23.03. "There are a number of theories" under which courts have compelled sureties to

arbitrate "even when the surety is not a signatory to an arbitration agreement." *Id.*

"Arbitration can commonly be compelled when the underlying construction contract contains an arbitration provision and that contract is specifically incorporated by reference into the bond. Since the standard AIA Document A312 Payment and Performance Bonds incorporate the prime contract by reference, sureties may frequently be faced with arbitration on this basis. . . . An assignee of a party entitled to arbitration may also be able to assert the rights of the assignor to compel arbitration." *Id.* The author further explains:

> An agreement need not expressly provide for arbitration but may do so in a secondary document incorporated by reference. The court [in *Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.*] recognized that a performance bond will be read with the contract because:
>
>> when a party enters into a contract to do certain work on certain terms, and procures a surety to guarantee the faithful performance of the work, the surety necessarily contracts with reference to the contract as made; otherwise it would not know what obligation it was assuming. And this is particularly so where the bond expressly declares that the contract is made a part of the bond and the terms of the contract are incorporated into the bond. . . .
>
> The court held that the incorporation of the contract into the bond expressed the intention of the parties, including the surety, to arbitrate disputes such as the subject breach of contract claim between the contractor and the owner.

*Id.* (discussing with approval *Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.*, 8 Cal. Rptr. 2d at 587, 589-90 (Cal. App. 1992)).

In support of its Motion to Compel Arbitration, Collage cites state and federal cases applying Florida surety law (Doc. 7 at 10-11) that require arbitration when the subcontract agreement's terms are incorporated into the bond agreement: *Henderson Inv. Corp. v. Int'l Fid. Ins. Co.*, 575 So. 2d 770, 772 (Fla. 5th DCA 1991) ("It is a general rule of contract law that where a writing expressly describes another document, the other document is to be interpreted as part of the writing."); *St. Paul Fire & Marine Ins. Co. v. Woolley/Sweeney Hotel No. 5*, 545 So. 2d 958, 958-59 (Fla. 4th DCA 1989) ("The construction contract contained an arbitration provision, and the performance bond incorporated the construction contract by reference. In so doing the [surety] bound itself to participate and be bound by the arbitration…"); *U.S. Fid & Guar. Co. v. West Point Constr. Co., Inc.*, 837 F.2d 1507 (11th Cir. 1988) (surety bound to submit its dispute to arbitration by incorporation of subcontract containing arbitration clause into performance bond); *Firemen's Ins. Co. of Newark, N.J. v. Edgewater Beach Owner's Assoc., Inc.*, 3:96-cv-256-RV, 1996 WL 509720, at 2 (N.D. Fla. June 25, 1996) ("[i]t is well settled that where a performance bond incorporates the provisions of a contract, the arbitration provisions of the contract are made a part of the bond and are applicable to disputes involving the surety"); *see also Auto Owners Ins. Co. v. Travelers Cas. & Sur. Co.*, 227 F. Supp. 2d 1248, 1265 n. 24 (M.D. Fla. 2002) ("[T]he incorporation of an arbitration provision arguably does not enlarge a surety's obligation and merely requires that the parties procedurally

adjudicate the alleged breach of the construction contract and claim pursuant to the bond through arbitration rather than a lawsuit."). Collage cites an additional dozen cases from states outside Florida that hold similarly. Doc. 7 at 11-12 (citing cases).

In response, Argonaut claims that the dispute over the Bond must be litigated in a "proper judicial forum" because the Bond agreement "explicitly requires the parties to litigate their disputes" and "[n]othing in the subcontract provision makes arbitration binding upon [Argonaut], and it therefore cannot override the performance bond's requirements." Doc. 20 at 1-2. The surety further argues that "judicial economy" requires that the parties litigate, not arbitrate, because it would require a second litigation to seek vacatur if the arbitrators exceed their jurisdiction; thus, Argonaut contends, forcing the surety to arbitrate in effect requires it to litigate the dispute "multiple times." *Id.* at 2.

Argonaut disputes that "Florida law stands for the broad proposition that anytime a bond incorporates by reference a bonded contract containing an arbitration provision the surety is automatically bound to arbitrate." Doc. 20 at 15. It argues that courts instead "must analyze the issue under state contract interpretation and Florida law on suretyship," and each bond agreement requires analysis of the specific language it contains. *Id.* Argonaut cites several Florida cases for general principles of contract interpretation applied to performance bonds where sureties had argued that specific demands by obligees—none of which were arbitration—fell outside the

language of the bond. Doc. 20 at 7-8 (citing *Am. Home Assur. Co. v. Larkin Gen. Hosp., Ltd*., 593 So. 2d 195, 196 (Fla. 1992) (holding that a surety cannot be held liable for delay damages due to the contractor's default unless the bond specifically provides coverage for delay damages); *Dooley & Mack Constructors, Inc. v. Developers Surety & Indemnity Co*., 972 So.2d 893, 894 (Fla. 3d DCA 2008) (where general contractor had added provision to the performance bond which explicitly allowed it to complete work that subcontractor did not finish, notice of default to surety was not required); *Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV*, 681 F. App'x 771, 775 (11th Cir. 2017) (surety is not bound to any obligations that are inconsistent with or expand the explicit obligations of its bond); *CC-Aventura, Inc. v. Weitz Co.*, 492 F. App'x 54, 55 (11th Cir. 2012) (holding that contractor's failure to give notice to subcontractor's surety before arranging for performance of work to cure subcontractor's default relieved surety of liability on its bond)).

However, none of Argonaut's cited Florida cases holds that the surety should *not* be required to arbitrate where the bond contract incorporates the terms of the subcontractor agreement. It is telling that Argonaut fails to cite even a single case from Florida in support of its proposition that the arbitration provision of the incorporated subcontract should *not* be applied to the general contractor's dispute with the surety. Instead, Argonaut relies exclusively on two out-of-state cases for the portion of its argument related to surety bonds in construction cases. Argonaut relies

on two cases from Maryland, *Schneider Elec. Buildings Critical Sys., Inc. v. W. Sur. Co.*, 231 Md. App. 27 (Md. App. 2016) and *Hartford Acc. & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md. App. 217 (Md. App. 1996), to argue that "a surety cannot be compelled to arbitrate when its bond calls for litigation and the bonded contract does not bind the surety to arbitrate disputes." Doc. 20 at 10-11. Instead of applying Florida contract law, both cases apply the Maryland Uniform Arbitration Act and Maryland contract law. Therefore, they are clearly inapposite to this case. Additionally, in *Schneider*, 231 Md. App. at 44, the court was considering conflicting terms in a *three* interlocking contracts which incorporated by reference others and made interpretation much more complex. Although Argonaut attempts to distinguish the Florida (and federal) cases cited by Collage, Argonaut's arguments are unavailing in light of clear case law directly on point from Florida and federal appellate courts.

As a Florida appellate court summarized the law three decades ago, in enforcing the arbitration provision of the subcontract incorporated by reference into the construction bond:

> It is a general rule of contract law that where a writing expressly describes another document, the other document is to be interpreted as part of the writing. *OBS Co., Inc. v. Pace Const. Corp.*, 558 So.2d 404 (Fla.1990). In addition, obligations of a surety under its bond agreement are coextensive with that of a contractor (principal). Thus, if the contractor owes the debt, so does the surety. A surety's obligation under its bond agreement is commensurate with that of the general contractor under the subcontract. *OBS* at 407. While a surety's obligation under the

bond is coextensive with that of the principal's obligation under a construction contract, the payment bond is a separate agreement and may create an additional obligation for a surety so that the inability of a subcontractor to proceed against a general contractor will not necessarily prevent recovery against a surety under a bond. *OBS* at 408. Finally, there is authority for the proposition that a surety may move to compel arbitration in accordance with an arbitration clause found within the terms of a contractor/subcontractor's construction contract. *Balboa Ins. Co. v. W.G. Mills, Inc.*, 403 So.2d 1149 (Fla.2d DCA 1981). *See also*, this court's decision in *Insurance Co. of North America v. Acousti Engineering Co. of Florida*, 549 So.2d 790 (Fla. 5th DCA 1989), jurisdiction accepted, 557 So.2d 866 (Fla. 1990).

*St. Paul Fire & Marine Ins. Co. v. Woolley/Sweeney Hotel No.* 5, 545 So.2d 958 (Fla. 4th DCA), *review denied*, 553 So.2d 1166 (Fla. 1989), stands for the proposition that when a surety bond incorporates a construction contract containing an arbitration clause by reference, *the surety binds itself to participate and be bound by arbitration* regarding disputes under the construction contract.

*Henderson v International Fidelity Ins. Co.*, 575 So.2d 770, 771-72 (Fla. 5th DCA 1991) (emphasis added).

In the other contemporaneous Florida appellate decision discussed in *Henderson, Woolley*, the court held that incorporating by reference the construction contract into the performance bond, the surety bound itself to participate and be bound by the arbitration of any disputes under the construction contract. *Woolley,* 545 So.2d at 958. Numerous courts applying Florida law in the ensuing three decades have found to the same effect following *Henderson* and *Woolley*. *See, e.g.*, *Miami Curtain Wall Consultants Corp. v. Clayco Constr. Co.*, No. 08-14302-CIV, 2009 WL 10666905, at *2 (S.D. Fla. Feb. 12, 2009) (enforcing dispute resolution clause of owner's contract

with general contractor that was incorporated by reference into construction contract with subcontractor); *Shores of Panama, Inc. v. Safeco Ins. Co. of Am.*, No. 07-00602KDB, 2008 WL 4417558, at *5 (S.D. Ala. Sept. 29, 2008) ("In Florida, sureties are bound to arbitrate disputes where the bond incorporates an underlying contract containing an arbitration provision."); *St. Paul Fire & Marine Ins. Co., Inc. v. La Firenza, LLC*, No. 8:06-cv-1855-JDW-TGW, 2007 WL 2010759 (M.D. Fla. Jul. 6, 2007) (holding that although the surety was not a party to the arbitration provision in the agreement between the owner and contractor, the construction contract was by reference made a part of the bond and the "same policy considerations favoring the resolution of disputes through arbitration supported a stay of this declaratory action."); *Firemen's Ins. Co. of Newark, N.J. v. Edgewater Beach Owner's Assoc., Inc.*, 1996 WL 509720, at *2 (N.D. Fla. June 25, 1996) (enforcing arbitration agreement from construction contract that was incorporated by reference into the performance bond).

The Eleventh Circuit's decision in *United States Fidelity & Guaranty Company v. West Point Construction Co., Inc.*, is directly on point and consistent with the cases cited above holding that the surety would be required to submit to arbitration based on terms of the construction contract that were incorporated by reference in this federal court. 837 F.2d 1507 (11th Cir. 1988) (per curiam). Much like the facts in this case, in *West Point*, the subcontract between the general contractors and the

subcontractor set forth an arbitration provision. *Id.* at 1507. Disputes arising under the subcontract about the adequacy of the subcontractor's performance were subject to arbitration under the provisions of the subcontract, but the subcontractor's surety opposed arbitration arguing that the bond did not incorporate the arbitration clause even though the performance bond incorporated by reference the subcontract. *Id.* at 1507-08. The panel concluded that "the incorporation of the subcontract into the bond expresses an intention of the parties, including [the surety] to arbitrate disputes." *Id.* at 1508 (citing *Exchange Mutual Insurance Company v. Haskell Company*, 742 F.2d 274 (6th Cir. 1984) (holding that the surety was bound to arbitrate by virtue of the incorporation into the performance bond of a subcontract which itself incorporated an arbitration clause); *J.S. & H. Construction Company v. Richmond County Hospital Authority*, 473 F.2d 212, 215 (5th Cir. 1973)[3] (distinguishing Miller Act cases and incorporating by reference arbitration clause from owner agreement to subcontractor agreement)).

As District Judge Vinson in the Northern District of Florida noted twenty-five years ago, "[i]t is well settled that where a performance bond incorporates the provisions of a contract, the arbitration provisions of the contract are made a part of the bond and are applicable to disputes involving the surety." *Firemen's Ins. Co.*,

---

[3] Cases decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

1996 WL 509720, at *2 (citing *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 331–32 (7th Cir. 1995); *Commercial Union Ins. Co. v. Gilbane Building Co.*, 992 F.2d 386, 389 (1st Cir. 1993); *Exchange Mutual Ins. Co. v. Haskell Co.*, 742 F.2d 274, 276 (6th Cir. 1984); *J & S Constr. Co., Inc. v. Travelers Indemnity Co.*, 520 F.2d 809, 810 (1st Cir. 1975); *J.S. & H. Constr. Co. v. Richmond County Hosp. Auth.*, 473 F.2d 212, 216 (5th Cir. 1973)).

On this pivotal point, Argonaut attempts to distinguish the cases cited by Collage but fails to cite a single case from Florida, instead relying on decisions from North Dakota, Nebraska, Colorado, North Carolina, and the Eighth Circuit. Doc. 20 at 15.

Argonaut also argues that the cases cited by Collage were decided before the cases Argonaut cites—*Larkin* in 1992 and *Dooley & Mack* in 2008—such as the 1996 case of *Firemen's Ins. Co. of Newark, New Jersey v. Edgewater Beach Owner's Ass'n, Inc.*, 1996 WL 509720, at *1 (N.D. Fla. June 25, 1996). Argonaut also argues that Collage's cited cases fail to consider the" legal nuances" of the language contained in the Bond and Subcontract in this case. Neither argument is persuasive, given the abundant case law on point.

The Florida Fifth District Court of Appeal in *Henderson* considered and rejected an argument similar to the one that Argonaut makes here – that, as the non-party, the surety should not be part of the arbitration because it was not a third-party

beneficiary or specifically mentioned in the incorporated agreement. *Henderson,* 575 So.2d 772. "[O]bligations of a surety under its bond agreement are coextensive with that of a contractor (principal). Thus, if the contractor owes the debt, so does the surety." *Id.*

In a case decided in 2007, Judge Whittemore reasoned in *St. Paul Fire & Marine Ins. Co., Inc. v. La Firenza*:

> [A]lthough [the surety] is not a party to the arbitration proceeding, given its relationship to [the contractor] as its principal under the bond, the same policy considerations favoring the resolution of disputes through arbitration support a stay of this declaratory action. "[W]here a surety has actual notice of arbitration proceedings instituted against its principal, the surety will be bound by an arbitration determination against its principal . . . ." *Fewox v. McMerit Constr. Co.,* 556 So.2d 419, 425 (Fla. 2d DCA 1989). Under Florida law, courts should "indulge every reasonable presumption in favor of arbitration, a favored means of dispute resolution." *K.P. Meiring Constr., Inc. v. Northbay I & E, Inc.,* 761 So.2d 1221, 1223 (Fla. 2d DCA 2000). "As a general premise, '[a]rbitration is especially appropriate in situations involving issues that are unique to certain industries and which require specialized knowledge for their resolution.'" *Id.* at 1223 (quoting *Lake Plumbing, Inc. v. Seabreeze Constr. Corp.,* 493 So.2d 1100, 1102 (Fla. 2d DCA 1986)). "[T]he construction industry is such an industry." *Id.*
> * * *
> To the extent [the surety] relies on [*Larkin*], that case does not conflict with the above cases which found sureties subject to arbitration where a bond incorporates an underlying construction contract containing an arbitration provision. Rather, [*Larkin*] adheres to the same principle underlying those cases, that "[a] bond is a contract, and, therefore, a bond is subject to the general laws of contracts." *Id.* at 197*; see also Auto Owners Ins. Co. v. Travelers Cas. & Surety Co.,* 227 F.Supp.2d 1248, 1265 n. 24 (M.D. Fla. 2002) ("the incorporation of an arbitration provision arguably does not enlarge a surety's obligation and merely requires that the parties procedurally adjudicate the alleged breach of the

construction contract and claim pursuant to the bond through arbitration rather than a lawsuit").

No. 8:06-cv-1855-JDW-TGW, 2007 WL 2010759, *2-3 (M.D. Fla. July 6, 2007).

Argonaut's final argument is that none of the cases cited by Collage analyze the particular language of the Bond referring to the "time for suit" versus language in the Subcontract requiring "arbitration" that Argonaut contends is contradictory. Doc. 20 at 11-13. Recently, in *Western Surety Co. v Caddell Construction Co., Inc*., the district court rejected the same reasoning by the surety who argued that there was no valid agreement to arbitrate based on the "time for suit" provision in the performance bond:

> When the performance bond and the subcontract are read together as an integral whole, as they must be, other provisions within or in addition to the arbitration agreement do not serve to nullify its broad effect. For example, the "time for suit" provision in the performance bond specifying that "[a]ny suit under this Bond may be instituted for the longest period of limitation," upon which [the surety] relies, does not evidence an intent to exclude [the surety] from the application of the arbitration agreement. The time for suit provision is permissive, not mandatory, and it benefits the "Obligee," here [the contractor], by extending the limitation period as long as possible. While its potential application may be limited under this interpretation to circumstances where parties waive their right to arbitrate, this interpretation does not render the time for suit provision without effect.

No. 7:21-cv-153-FL, 2022 WL 2057725, *7 (E.D. N.C. June 7, 2022). Similarly, the "time for suit" provision of the Subcontract in this case is permissive but requires suit to be brought two years from "substantial completion." The court in *Caddell* also found that the arbitration agreement of the subcontract was "broadly worded,"

applying to "[a]ll claims, disputes and other matters in question," without limitation to particular named parties, and without excluding [the surety] from its application." *Id*. at *6. "In order for every provision of the subcontract to be given effect, the court cannot ignore the broad generally-applicable unqualified language of the arbitration agreement." *Id.* (internal quotations omitted). The arbitration provision in this case is similarly "broadly worded" and includes "all disputes" or "any dispute" under the Subcontract to be "settled by arbitration." Doc. 6-1. Accordingly, arbitration in this case is appropriate.

## CONCLUSION

Based on the foregoing, it is respectfully **RECOMMENDED** as follows:

1. Defendant's Motion to Compel Arbitration, Dismiss Count III of the Amended Complaint for Injunctive Relief and for Stay (Doc. 7) be **GRANTED**;

2. The Clerk be directed to administratively close the case; and

3. The parties be required to submit a report concerning the status of arbitration 90 days after any order adopting this Report and Recommendation and every three months thereafter.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to

file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

      Recommended in Orlando, Florida on September 12, 2022.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record